Argued October 25, 1965, reversed and remanded January 19,
petition for rehearing denied March 8, 1966

## CAREY ET AL *v.* HAYS ET AL
409 P. 2d 899

74

*Austin Dunn,* Baker, argued the cause and filed a brief for appellants and cross-respondents.

*Willard K. Carey,* La Grande, argued the cause and filed a brief for respondents and cross-appellants. On the brief were Burleigh, Carey & Gooding, La Grande.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, LUSK and SCHWAB, Justices.

DENECKE, J.

The plaintiff Carey's decedent and the decedent's wife, Jean Wickersham, together with the defendants Hays and another, Swails, contracted to buy a ranch. The defendant Hays was also the realtor in the transaction, representing the seller. The plaintiffs contend Hays was guilty of misrepresentation and ask a money judgment. The trial court held for the plaintiffs and defendants appeal.

The defendant Hays was a California realtor. He had previously lived in Wallowa county, Oregon. He knew the Warnocks, who had a ranch for sale in Wallowa county. The Warnocks had listed their ranch for sale with the A. B. Miller Realty, of Oregon, and had an "oral listing" with Hays. The listing with Miller was for $210,000. The oral listing with Hays was for a net of $200,000 to the Warnocks.

Hays offered the ranch to the Wickershams for $260,000. Wickersham wanted to buy at this price but needed financial help. It was, therefore, agreed that Wickersham would buy an undivided one-half, Hays an undivided one-fourth, and Swails the other one-fourth, with each paying a proportionate share of the purchase price. Pursuant to such an agreement a contract of sale was executed between the parties and payment was made.

The normal commission of $10,000, 5 per cent of the purchase price received by the Warnocks, $200,000, was split 50-50 between Hays and Miller Realty. Hays received an additional $50,000 gross commission, such sum being the difference between the purchase price, $260,000, and $210,000 (the $200,000 net received by the sellers, plus the normal 5 per cent commission of $10,000).

Plaintiffs contend that defendant misrepresented the minimum purchase price fixed by the sellers. Plaintiffs obtained an assignment of Swails' claim against Hays and sought a recovery of three-quarters of the $50,000 commission, or $37,500.

The defendant alleged as an affirmative defense that the cause of action accrued more than two years before the filing of the complaint and, therefore, was barred by the statute of limitations.

Before the trial commenced the plaintiffs moved to have the case tried as a suit in equity. No ruling on this motion appears in the record. The trial commenced with a jury. After the testimony of several witnesses, the plaintiffs moved "the Court to discharge the jury and try this case as a suit in equity for a partnership accounting." The ground for the motion was that the testimony proved that the plaintiffs and the defendant Hays acquired the property as partners. The trial court allowed the motion and dismissed the jury. The trial court concluded that as the cause was in equity, the question was one of laches, not of the statute of limitations, and held that the planitiffs were not guilty of laches.

It is necessary to determine at the outset whether the matter is one at law or in equity. If it is at law, a fraud action for damages, the two-year statute of limitations commenced to run when the plaintiffs discovered, or should have discovered, the fraud. ORS 12.110; *Linebaugh v. Portland Mortgage Co.,* 116 Or 1, 8, 239 P 196 (1925). There was conflicting evidence upon the issue of when the fraud was discovered. It would be necessary for the trier of fact to make a determination of this issue. If it is an action at law, it would, of course, have been error to dismiss the jury over defendant's objection.

We will assume, as defendants apparently have assumed, that when the Wickershams and Hays agreed between themselves to purchase, they entered into a fiduciary relationship. The testimony would support a finding that the defendant misrepresented the minimum purchase price by failing to divulge to the Wickershams that the Warnocks were willing to sell for a net of $200,000. We conclude, however, this lawsuit is an action at law and not a suit in equity.

██ Whether a lawsuit is at law or in equity is sometimes a perplexing problem. The usual basis for distinction is the nature of the relief sought. With limited exceptions, a suit for an injunction is in equity because only equity gives injunctive relief.[①] The statute limits equitable relief to "cases where there is not a plain, adequate and complete remedy at law," or "where courts of equity have been used to exercise concurrent jurisdiction with courts of law." ORS 11.020.

█ If a party brings a lawsuit to enforce a right originally only cognizable in equity, an action to enforce such right can be maintained at law if the relief sought can adequately be given at law. An example is *Crow v. Strome,* 214 Or 158, 170-171, 327 P2d 414 (1958). We held: "When a trustee, as here, is under a duty to pay money immediately or unconditionally to the beneficiary, the beneficiary can maintain an action at law to enforce payment." Although the decision does not explicitly so state, the reasonable inference from the context is that law has exclusive jurisdiction of such proceedings when the prayer is for a judgment for a certain sum of money. This conclusion is reached because the opinion cites as authority for the above-quoted statement 1 Restatement 522, Trusts § 198(1). The comment to that section states: "Although the beneficiary can maintain an action at law against the trustee as stated in this Section, he has also equitable remedies against the trustee (see § 199)." Section 199 states that the beneficiary has those remedies against the trustee which are traditionally equitable,—specific performance, etc.

Pomeroy is in accord that law may have exclusive

---

[①] For example, ORS 29.300.

jurisdiction: "\* \* \* equity does not assume jurisdiction \* \* \* to recover money held in trust, where an action for money had and received will lie." 1 Pomeroy, Equity Jurisprudence (5th ed), 248-250, § 178.

In the instant case the plaintiffs alleged as follows:

"That as a result of the false and fraudulent misrepresentations as to the true sales price of the Warnock's property, and the concealing by the defendant, Ted G. Hays, of the secret profit which he had made, plaintiffs have been *damaged* to the extent of their 50% interest that is $25,000.00, as well as by the 25% interest of M. G. Swails which said plaintiffs have purchased, that is $12,500.00, for a total *damage* to the plaintiffs of $37,500.00." (Emphasis added.)

The prayer to their complaint is as follows:

"WHEREFORE, plaintiff prays that defendants, Ted G. Hays and Virginia E. Hays, *be required to account to the plaintiffs* for all moneys received by said defendants from the purchase and sale of the Warnock property; that plaintiffs have judgment against the defendants, Ted G. Hays and Virginia E. Hays, for the sum of $37,500.00; that the defendant corporation be ordered to cancel and declare as null and void $37,500.00 of defendants stock in said corporation; and that plaintiffs have such other and further relief as may be just, together with the plaintiff's costs of this suit." (The reference to a corporation refers to a corporation formed by the buyers to hold title to the ranch and in which they took stock in proportion to their share of the ownership.) (Emphasis added.)

The trial court stated at the time of its ruling: "I think perhaps we're all agreeing it's not so-called an accounting, equitable accounting action."

■ We agree that it is not a suit for an accounting although in the complaint it is prayed that defendant "be required to account." Without being definitive, we understand an accounting to be a bookkeeping process whereby debits and credits are balanced or a balance of mutual accounts is struck. In this case no bookkeeping was necessary. It was admitted that defendant received additional gross commission of $50,000. The only question on amount was as to what percentage, if any, of $50,000 plaintiffs were entitled.

■ We conclude that because an accounting, as that phrase is used in the above paragraph, is not necessary, nor is any other form of equitable relief necessary, the proceedings are legal, not equitable.

The trial court undoubtedly relied upon the statements in several of our decisions similar to the one in *Templeton v. Bockler,* 73 Or 494, 507, 144 P 405 (1914), as follows: "The rule is universal that courts of equity have jurisdiction to settle accounts whenever a fiduciary relation exists between the parties and the duty to render an account to one of the parties rests upon the other * * *." To the same effect are *Huebener v. Chinn,* 186 Or 508, 530, 207 P2d 1136 (1949); *Kelley v. Mallory,* 202 Or 690, 704, 277 P2d 767 (1954); *Flaherty v. Bookhultz,* 207 Or 462, 466, 291 P2d 221, 297 P2d 856 (1956). In all of the above-cited cases, except the last, an accounting, in the bookkeeping sense, was required. This is not stressed in the opinions, but is part of the context in which the statement is made. In the last-cited case we held the proceeding was an action at law and not an equitable suit for an accounting.

Plaintiff also contends that this is properly treated as a suit in equity because a portion of the relief sought is cancellation of defendant Hays' stock in the

Y Cross Ranch, Inc., the buying corporation. Cancellation of stock is relief that can only be granted by a court of equity. Nevertheless, we hold that the prayer for this type of relief does not make this a suit in equity.

Pomeroy states the general rule:

"* * * Even when the cause of action, based upon a legal right, does involve or present, or is connected with, some particular feature or incident of the same kind as those over which the concurrent jurisdiction ordinarily extends, such as fraud, accounting, and the like, still, if the legal remedy by action and pecuniary judgment for debt or damages would be complete, sufficient, and certain—that is, would do full justice to the litigant parties—in the particular case, the concurrent jurisdiction of equity does not extend to such case." 1 Pomeroy, Equity Jurisprudence (5th ed), 247, § 178.

*Nelson v. Smith,* 157 Or 292, 69 P2d 1072 (1937), illustrates the above rule. In that case the plaintiff suffered personal injuries in an accident with the defendant, who lived in California. The accident was in Oregon. The plaintiff sued to enjoin the defendant from transferring his Oregon property, asked for damages for personal injuries, and asked "that the amount of damages be impressed as a lien upon the real property * * *." 157 Or at 295. Service of the summons in this proceeding was made upon the defendant in California and his motion to quash was denied. The trial court tried the matter without a jury and gave the plaintiff damages and impressed the amount as a lien upon defendant's real property.

The court stated:

"The primary right of the plaintiff is purely legal. It is the right to recover damages for in-

juries arising out of a tort—a matter solely within the cognizance of the law. Equity has no jurisdiction to pass upon a purely legal demand for unliquidated damages. The injunctive relief prayed for in the amended complaint is insufficient to bring the case within the province of equity *because such proceeding was ancillary to the enforcement of a purely legal right.* The fundamental rule that when equitable jurisdiction attaches it will grant complete relief has no application to the instant case for the simple reason that it never attached in the first instance." (Emphasis added.) 157 Or at 300.

Another example of the general principle is *Tucker v. Simmons,* 199 Tenn 359, 287 SW2d 19 (1956). That, too, was a proceeding to recover damages for personal injuries and the plaintiff also asked that a release be rescinded upon the grounds of fraud and the inadequacy of the amount. The court held that this was an action at law. It said:

"Obviously the reason for this lawsuit and the gravamen of the lawsuit as contained in the bill filed was for the purpose of securing unliquidated damages for the injury that this woman received. This being true the Chancellor exercising his discretion (19 Am. Jur., p. 49, Sec. 19, Equity) and dismissed the suit because the main subject was a law cause *and the equitable right was merely incidental* and this equitable right might likewise be disposed of in a trial in the law court.  \*   \*   \*" (Emphasis added.) 287 SW2d at 20-21.

In the present case the prayer for cancellation of the stock was merely "ancillary" and "incidental" to the legal remedy for damages. In addition, neither the pleadings nor the evidence reveal any reason why a money judgment for damages would not give the plaintiff adequate relief.

The relief sought in the present case was a judgment for a specified sum of money determinable without any accounting. A money judgment for damages appears to be completely adequate relief. Under such circumstances we hold the proceedings are governed by the rules for actions at law. The defendant has the right to a trial by jury; the trier of fact must determine when the statute of limitations commenced to run.

Reversed and remanded for a new trial.