Argued October 30, affirmed November 22, petition for
rehearing denied December 19, 1967

CAREY ET AL, *Respondents, v.* HAYS, *Appellant.*

434 P. 2d 331

*Carl G. Helm,* La Grande, argued the cause for appellant. With him on the briefs was Austin Dunn, Baker.

*Willard K. Carey,* La Grande, argued the cause for respondents. With him on the brief were Burleigh, Carey & Gooding, La Grande.

Before PERRY, Chief Justice, and O'CONNELL, GOOD-WIN, DENECKE, HOLMAN and WOODRICH, Justices.

WOODRICH, J. (Pro Tempore).

This is a fraud action wherein plaintiff as administrator and his decedent's widow obtained judgment based on a jury verdict. The case was originally tried as a suit in equity, but on appeal this court reversed, holding that the case should have been tried as a law action. *Carey v. Hays,* 243 Or 73, 409 P2d 899 (1966).

■ Defendant contends that the trial court erroneously overruled his motions for non-suit and directed verdict. In questioning the propriety of the trial court's rulings on motion for non-suit or motion for directed verdict, the motions must be regarded as having admitted the truth of plaintiffs' evidence and every inference of fact that may be drawn from the evidence, and the evidence itself must be interpreted in the light most favorable to the plaintiff. *Phillips v. Colfax Co., Inc.,* 195 Or 285, 302, 243 P2d 276, 245 P2d 898 (1952); *Fish v. Southern Pacific Co.,* 173 Or 294, 301, 143 P2d 917, 145 P2d 991 (1943).

There was substantial evidence from which the jury could find that plaintiff's decedent, Wickersham, Jean Wickersham, his wife, Defendant Hays, and one Swails, entered into a joint venture to purchase the Warnock Ranch in eastern Oregon in 1958. Wickershams were California residents. Defendant was a California realtor who knew the Warnock Ranch was for sale. Hays had lived in Wallowa County previ-

ously. Warnocks had listed their ranch for sale with the A. B. Miller Realty, an Oregon firm, for $210,000, ($200,000 to the Warnocks, plus $10,000 real estate commission). This written listing was in full force and effect when the joint venture contracted to purchase the ranch. Hays had an "oral listing" from Warnocks for $200,000 net to Warnocks. Hays offered the ranch to Wickershams for $260,000. Wickershams did not know of the listing at the lower figure. Hays did not disclose that the ranch could be purchased under the Miller Realty listing for $50,000 less than the $260,000 price he had fixed. Wickershams were willing to purchase the ranch at the $260,000 price fixed by Hays but required financial help. Wickersham asked Hays if they would be able to get Warnocks to take less money for the ranch. Hays discouraged efforts toward this end, claiming that such efforts might cause the sale to fall through. Because Wickersham wanted financial assistance, he requested that Hays and Swails join Wickershams in purchasing the ranch. Hays agreed to join in the purchase, but insisted that he "get his commission." Hays did not disclose the amount of his "commission." The joint venture contracted to purchase the ranch for $260,000. Wickershams had a one-half interest and defendant and Swails each had a one-quarter interest in the joint venture. Each joint venturer agreed to pay his proportionate share of the purchase price of the ranch.

Hays employed Miller Realty as "showing broker" and took one-half of the $10,000 broker's commission provided under the Miller Realty listing. From the evidence the jury could have found that the ranch was sold under the Miller Realty listing. Hays also was paid $50,000, the difference between his "oral listing" net figure and the purchase price. Plaintiffs

claim, and the jury awarded plaintiffs, one-half of this $50,000.

■ When Wickershams and Hays agreed between themselves to purchase the Warnock Ranch, they entered into a fiduciary relationshp. *Carey v. Hays,* supra; *McIver v. Norman,* 187 Or 516, 205 P2d 137, 213 P2d 144, 13 ALR2d 749 (1949).

■ The relationship "* * * imposes upon the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness and honesty in their dealings with each other with respect to the matters pertaining to the enterprise". *McIver v. Norman,* supra, page 536. Although the evidence was conflicting the jury could have found that the defendant misrepresented the minimum price the Warnocks would accept for the ranch. A $50,000 or 20 per cent differential would obviously be material. The evidence of defendant's efforts to dissuade negotiation with the Warnocks would be evidence from which the jury could determine that defendant intended the plaintiff to rely on his representation rather than seeking the truth from the sellers. Defendant knew that the ranch could have been purchased for $210,000 and it is clear that Wickersham relied on defendant's representation of the minimum purchase price. Defendant does not seriously contend the Wickershams knew that the ranch could be purchased for $50,000 less. It is urged by defendant that Wickersham was put on inquiry concerning the amount of his "commission" because defendant insisted on receiving a commission before he would join the joint venture. In this case Wickersham had a right to assume his co-joint venturers would act in good faith. In addition Wickersham was an absentee purchaser, thereby making detailed inquiry

more difficult. There was evidence that defendant discouraged contact with the sellers. Under these circumstances the jury was entitled to find Wickersham's reliance on the representation to be reasonable.

Thus, there being evidence from which the jury could make a finding in favor of the plantiff on the elements of a fraud action, defendant's motions for non-suit and directed verdict were properly overruled.

To this point we have considered this case from the standpoint of an affirmative misrepresentation. The judgment can be sustained on an additional ground. Plaintiffs' complaint alleged that defendant concealed and withheld a secret profit of $50,000 from his co-joint venturers. Defendant sought to characterize his retention of $50,000 as a "commission." We are of the opinion that the duty to use "the utmost good faith, fairness and honesty" required by *McIver v. Norman,* supra, imposed upon the defendant a duty to disclose to his fellow joint venturers that he was retaining proceeds substantially in excess of a 5 per cent commission, and that the property was available $50,000 cheaper. Had the joint venturers then knowingly chosen to proceed with the transaction they could not complain. However, defendant failed to disclose his secret profit and must account to the joint venture therefor.

Defendant urges that *Advance Realty Co. v. Nichols,* 126 Minn 267, 148 NW 65 (1914) requires a contrary result. The facts of the *Advance Realty* case are quite similar to those of the instant case but the case is distinguishable. In *Advance Realty* the commission was 6 per cent, an amount that would be considered normal. If the joint venturers purchased property through any broker they would have paid a com-

mission in that approximate sum. Consequently, the retention of a commission in that sum by one joint venturer would not withhold from the joint venture profits that should accrue to all. It should be noted that plaintiffs do not complain of defendant's retention of his share of the normal commission, i.e., the one-half of the $10,000 commission provided for under the Miller Realty listing. In the instant case the defendant arranged the sale with himself as broker for a total commission of $60,000, when he knew that the property could be purchased at a $10,000 commission. In addition, there was no evidence in the *Advance Realty* case that the broker sought to discourage contact with the sellers.

Defendant contends that the plaintiffs' action is barred by the statute of limitations. The fraudulent transaction occurred in 1958 and the action was filed January 30, 1963. In an action at law based on fraud or deceit, the two-year limitation shall be deemed to commence only from the discovery of the fraud or deceit. ORS 12.110 (1). Defendant contends that the trial court erred in not ruling as a matter of law that plaintiffs' action is barred by this statute. The time of discovery and whether plaintiffs exercised reasonable diligence to discover the fraud sooner were in issue in the instant case. "* * * Generally when the alleged fraud was discovered, or whether a reasonable diligence was exercised by plaintiff to discover the same, are ordinarily questions for the jury, and it is only when the evidence was uncontradicted and only one inference can reasonably be drawn therefrom it becomes a question for the court to determine * * *." *Wood et ux v. Baker et ux,* 217 Or 279, 288, 341 P2d 134 (1959). Where the evidence is in conflict, it is for the trier of the fact to determine when the statute

of limitations commences to run. *Carey v. Hays,* supra. In the instant case the evidence of reasonable diligence and time of discovery was in conflict. The issue was properly submitted to and decided by the jury.

■ Defendant complains that Jean Wickersham was not a proper party plaintiff. As a member of the joint venture injured by the defendant's wrongdoing, she was properly joined as a plaintiff.

The defendant assigns error to certain rulings by the trial court on the pleadings and evidence. These have been examined and we find them to be without merit.

Affirmed.