Argued and submitted January 5, 1998, decision of Court of Appeals and judgment of circuit court reversed; case remanded to circuit court February 17, 2000

Bruce THOMPSON,
*Respondent on Review,*

*v.*

Jean COUGHLIN,
*Petitioner on Review.*

(CC A8911-06395; CA A87937; SC S43847)

997 P2d 191

Stephen S. Walters, of Stoel Rives LLP, Portland, argued the cause on behalf of petitioner on review. With him on the briefs was Keith M. Garza.

Michael L. Williams, of Williams & Troutwine, P.C., Portland, argued the cause on behalf of respondent on review. On the briefs was Jeffrey S. Merrick.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, and Kulongoski, Justices.**

KULONGOSKI, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision; Durham, Leeson, and Riggs, JJ., did not participate in the consideration or decision of this case.

## KULONGOSKI, J.

This action was brought by one partner of a two-person partnership for breach of their partnership agreement. Plaintiff and defendant, agents for Mutual of New York Insurance Company, formed a partnership in 1984 to sell life insurance. After defendant withdrew from the partnership in 1988, a dispute arose about the sharing of commissions, and plaintiff brought this action in which he sought both an accounting from, and a money judgment against, defendant.

The original partnership agreement provided that the partners would share equally all commissions earned during the life of the partnership.[1] That agreement further provided that, if one partner withdrew, then the partners would continue to share equally commissions for insurance sold to designated partnership clients or accounts within the two years following the dissolution of the partnership.[2] In February 1986, the partners negotiated two additional documents addressing the sharing of commissions during the life of the partnership and shortening from three months to 30 days the effective date of termination following notice of withdrawal by either partner.[3] In November 1988, defendant

---

[1] The 1984 partnership agreement provided, in part:

"* * * We have agreed to form a partnership which shall commence as of [April 24, 1984,] and shall continue until terminated as provided by this agreement.

"* * * * *

"We agree to divide the net profits and losses of the partnership equally. * * *"

[2] The 1984 agreement provided, in part:

"1. At the effective date of withdrawal, the parties shall designate those clients and accounts in which the withdrawing partner has an interest. At any time within two (2) years from the date of withdrawal, if the designated clients or accounts purchase a life insurance policy or related product from either the withdrawing partner or the continuing partner, the parties shall account between them for the commission received in accordance with our agreement to share profits equally. In addition, the withdrawing partner shall receive his/her share of any commissions due and owing as of the date of withdrawal from the partnership and shall receive on a continuing basis his/her share of any renewal commissions paid on insurance products written during the term of the partnership."

[3] The 1984 agreement provided, in part:

"Should one of us desire to withdraw from the partnership, he/she shall give written notice to the other partner of the intention to withdraw. Such

wrote a letter to plaintiff, notifying plaintiff of her withdrawal from the partnership.

In 1988, before the partnership dissolved, and again in 1989, after dissolution, defendant and insurance agents working with her sold two insurance policies to the Macdonald family. The parties disagree about plaintiff's level of involvement in the 1988 sale, but agree that he did not participate in the 1989 transaction. A dispute arose between plaintiff and defendant about sharing the commissions that defendant received on both Macdonald transactions.

In November 1989, plaintiff filed an action in law, entitled "Complaint For Breach Of Contract And Interception Of Commission," alleging that defendant was in breach of the partnership agreement and that plaintiff was entitled to share in the commissions withheld. Defendant's answer raised four affirmative defenses, three of which were equitable defenses: unclean hands, waiver, and estoppel. The case was submitted to nonbinding arbitration. Defendant appealed from the arbitration award and requested a jury trial.

Plaintiff later filed a "First Amended Complaint For An Accounting," alleging in part:

"8.   Plaintiff is entitled to such an accounting from defendant, and is entitled to receive from defendant plaintiff's equal share in any such profits. Plaintiff is without knowledge as to * * * how much money is due to him from defendant.

"* * * * *

"10.   Defendant is in breach of the partnership agreement already in that:

"* * * * *

"(C)   Defendant has failed to pay to plaintiff his fifty percent (50%) of her profits to date, as well as prejudgment interest thereon at the legal rate of nine percent (9%) per

---

notice shall be effective three months after the date of delivery of the notice. * * *"

The 1986 agreement provided, in part:

"* * * We have agreed that commencing January 1, 1986[,] and continuing until terminated by thirty (30) days' prior written notice by either party, that we will share commissions on the basis outlined in this letter. * * *"

annum on the monies owed from the date defendant received them to the date of the judgment in this case; and

"(D) Defendant has also refused, in anticipatory breach of her obligation, to pay one-half of future renewal commissions on the same sales, for the next several years. Therefore, plaintiff is entitled to a sum of money in the form of a judgment against defendant representing the present value of his one-half of those future renewal commissions."

In her answer, defendant again raised the equitable defenses of unclean hands, waiver, and estoppel, and demanded a jury trial. On plaintiff's motion to strike defendant's jury demand, the trial court decided, based on the pleadings, that the action was in equity and that neither party was entitled to a jury trial.

The trial commenced in equity. The trial court held that the 1986 agreements collectively replaced the original 1984 partnership agreement in its entirety and that plaintiff had no right to an accounting or to recover commissions or profits from defendant. Accordingly, the trial court entered judgment for defendant. On plaintiff's appeal, the Court of Appeals reversed and remanded, holding, among other things, that the 1986 agreements supplemented, rather than replaced, the original 1984 partnership agreement. *Thompson v. Coughlin*, 124 Or App 398, 402, 862 P2d 582 (1993).

On remand, the trial court, again treating the matter as one in equity, refused to render an accounting on the ground that plaintiff had unclean hands and, consequently, was not entitled to equitable relief. Plaintiff appealed, and the Court of Appeals, on *de novo* review, reversed and remanded with instructions to render an accounting. *Thompson v. Coughlin*, 144 Or App 348, 357, 927 P2d 146 (1996). We allowed defendant's petition for review. On *de novo* review, we reverse the decision of the Court of Appeals.[4]

■  From the record, it appears that, when this action originally was filed, the parties viewed the action as one in

---

[1] ORS 19.125(4) provides that, when the Court of Appeals has "tried a cause anew upon the record," this court "may limit its review of the decision of the Court of Appeals to questions of law." In this case, however, we exercise our discretion to review the case *de novo*.

law. Plaintiff filed his complaint as an action in law for breach of contract. After defendant answered by asserting three equitable defenses, plaintiff moved to strike on the ground that the action was in law and, therefore, equitable defenses did not apply. Defendant then made a jury demand. The trial court ruled, however, that defendant was not entitled to a jury trial, and the action was litigated as one in equity. On appeal, defendant continued to argue that the trial court erred in denying her jury demand. However, in the first decision by the Court of Appeals in this case, *Thompson*, 124 Or App at 401-02, the Court of Appeals rejected defendant's argument that she was entitled to a jury trial. Both parties and the trial court then proceeded under that determination as the law of the case. At oral argument in this court, however, the parties reiterated their original positions: Plaintiff argued that the action was one in law, and defendant argued that she was entitled to a jury trial.[5]

We originally allowed review of this case to decide whether the Court of Appeals' "comparative approach" to analysis and application of the equitable defense of unclean hands was correct. As is evident from the foregoing, however, it is unclear from a procedural standpoint whether plaintiff's action is one in law or equity. Consequently, as a threshold issue, we first must determine whether plaintiff's action is legal or equitable in nature. *See Community Bank v. Jones*, 278 Or 647, 650, 566 P2d 470 (1977) (even though issue was not cross-appealed, "in determining the proper scope of our review, we must, as a preliminary matter, determine whether this lawsuit is one at law or in equity"). We begin by examining the source of plaintiff's action for an accounting.

Plaintiff and defendant agreed in their 1984 partnership agreement to be bound by the Uniform Partnership Act (UPA), codified as ORS chapter 68.[6] The 1986 modifying

---

[5] As noted, the Court of Appeals' ruling operated as "law of the case" as to the trial court and the Court of Appeals. However, as this court never has addressed this issue, this court is not bound by the Court of Appeals' ruling as law of the case. *See generally State v. Simonsen*, 329 Or 288, 302, 986 P2d 566 (1999) (demonstrating that, although Supreme Court may proceed on basis of law of case as established below, it considers itself bound to do so only by former decisions of Supreme Court made in same case and on same set of facts).

[6] The 1984 agreement provided, in part:

agreements made no mention of chapter 68. A simultaneous reading of the three instruments, which we do in conformance with the Court of Appeals' holding that the 1986 agreements supplemented, rather than replaced, the 1984 agreement, leaves intact the provisions of the 1984 agreement relating to chapter 68.

ORS 68.650, the section of chapter 68 applicable to post-dissolution actions for an accounting, provides, in part:

> "The right to an account of the interest of the partner shall accrue to any partner * * * as against the winding up partners or the surviving partners or the person * * * continuing the business, at the date of dissolution, in the absence of any agreement to the contrary."

Plaintiff and defendant agreed in their partnership agreement to be bound by ORS chapter 68 and listed no "agreement to the contrary." Plaintiff, therefore, has a statutory right under ORS 68.650 to bring an action for an accounting.

Although the substantive right to bring an accounting action on dissolution is mandatory under the UPA (unless the parties' agreement provides otherwise), the UPA is silent as to whether the nature of that relief is in law or in equity. When the UPA fails to provide direction for an issue, such as the nature of relief for an accounting proceeding, section 5 of the UPA, codified as ORS 68.050, provides that "the rules of law and equity * * * shall govern." We turn, then, to the "rules of law and equity" for guidance regarding the nature of an accounting action.

■■ Generally, at common law, jurisdiction for partnership accounting actions lay in equity because of the inconvenience of examining complicated accounts, frequently of long standing, the confidential relationship between the partners, and the necessity of discovery. It also generally was established at common law that an equitable accounting was a condition precedent to an action in law between partners. *See* Alan R. Bromberg and Larry E. Ribstein, II *Bromberg and Ribstein on Partnership*, § 6.08(c) (Supp 2000) (explaining basis for exclusivity of equitable accounting remedy between partners). The exclusivity of an equitable accounting came to

---

"We agree to be bound by the provisions of ORS [c]hapter 68 with respect to the rights and obligations of each partner to the other and to the partnership, including termination and dissolution of the partnership. * * *"

be called the "exclusivity rule." *Id.*, § 6.08(c) at 6:174. Practical reasons usually cited for the rule focused on the nature of partnership claims, as explained above, and the desire to avoid piecemeal litigation of multiple claims likely to involve related facts. *Id.*, § 6.08(c) at 6:177. Over time, however, exceptions to the rule developed for claims that failed to implicate traditional policy concerns.

This court long has recognized the general exclusivity rule, as well as the existence of certain exceptions to that rule. *See, e.g., Wilson v. Wilson*, 26 Or 251, 257, 38 P 185 (1894) (stating general rule that partnership accounts must be settled before partners can sue one another, but allowing an action in law between partners when relief sought is separate from general partnership business); *McKee v. Capitol Dairies*, 164 Or 1, 6, 99 P2d 1013 (1940) (noting exception to exclusivity rule when partnership formed to carry out single transaction or venture and does not involve complicated accounts).[7]

More recently, in *Carey v. Hays*, 243 Or 73, 77, 409 P2d 899 (1966), this court held that, although an action such as an accounting was "originally only cognizable in equity," an action nonetheless could be maintained in law "if the relief sought can adequately be given at law." *Carey* involved an agreement between fiduciaries to purchase property. The plaintiffs, praying for a money judgment, alleged that defendant Hays was guilty of misrepresenting the purchase price of the property. The trial court concluded that the plaintiffs and the defendants had acquired the property as partners, dismissed the jury, and tried the case as a partnership accounting in equity. 243 Or at 76.

On review, the court in *Carey* reasoned that whether jurisdiction of an action was in law or in equity should be

---

[7] The 1997 Legislature enacted the Revised Uniform Partnership Act (1996) (RUPA), with some modifications, effective January 1, 1998. Or Laws 1997, ch 775. We note that RUPA expressly abolishes the exclusivity rule. ORS 67.160(3) (1997) provides, in part:

"A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting * * *."

However, because the partnership in this case was created before the effective date of RUPA, January 1, 1998, the abolishment of the exclusivity rule under RUPA is not relevant here. Or Laws 1997, ch 775, §§ 84, 103.

determined by the nature of the relief sought in the complaint. *Id.* at 77. In their complaint, the plaintiffs had prayed " 'that defendants * * * *be required to account to the plaintiffs* for all moneys received by said defendants from the purchase and sale of the * * * property,' " and for a money judgment. *Id.* at 78 (emphasis in original). Although the complaint prayed that the defendants "be required to account," this court concluded that a formal equitable accounting, defined by the court as a "bookkeeping process whereby debits and credits are balanced or a balance of mutual accounts is struck," was not necessary under the circumstances. *Id.* at 79. The court noted that the amount of additional money received by defendant Hays had been ascertained and that the only question remaining was what percentage of that amount, if any, was owed to the plaintiffs. *Id.* The court, therefore, concluded that the proceedings were legal, not equitable, because "[t]he relief sought * * * was a judgment for a specified sum of money determinable without any accounting." *Id.* at 82. Under *Carey*, then, the determination whether jurisdiction of an action lay in law or equity requires an examination of the nature of the relief sought in the complaint. If adequate relief may be obtained in law, then equitable jurisdiction will not be invoked.

■■   The court's reasoning in *Carey*, as well as the test announced for determining whether jurisdiction is in law or equity, applies to the case at bar. It is true that plaintiff's title to his complaint, as well as his prayer for an accounting, both could be argued as sources of equitable jurisdiction. In that regard, however, this court has held that the title of a complaint does not dictate the form of the remedy. *Lieuallen v. Heidenrich*, 259 Or 333, 335, 485 P2d 1230 (1971). Moreover, "[t]he fact that the complaint mentions an accounting does not convert the cause into an equity suit." *Id.* (*citing Carey*). Neither is a complaint's request for equitable relief, ancillary to a purely legal right, sufficient to bring a case within the province of equity. *Nelson v. Smith*, 157 Or 292, 300, 69 P2d 1072 (1937). Therefore, in accordance with plaintiff's own acknowledgment at oral argument, we move beyond the words used by plaintiff in his pleadings and examine the nature of the relief sought to determine whether jurisdiction of this case lies in law or in equity.

Like the plaintiffs' complaint in *Carey*, plaintiff's first amended complaint in this case prayed both for an accounting from defendant and a money judgment against her for plaintiff's one-half share of commissions earned on designated accounts during the two-year period following termination of the partnership.[8] The first amended complaint did not state a specific amount of damages because, according to plaintiff, he did not know the exact amount of money due. We note, however, that, in his first brief to the trial court, plaintiff was able to provide a detailed calculation of his damages. That calculation, presumably based on pretrial discovery, focused on two transactions: one in 1988 and the other in 1989, both involving the Macdonald family. Although plaintiff speculated that additional money would be earned by defendant on renewal of the Macdonald accounts, he was able, in his brief, to make a claim for a specific amount of damages. Even in his most recent Court of Appeals' brief, plaintiff conceded that "[the commissions on the sales to the Macdonalds] are the only commissions in dispute."

As noted above, in *Carey*, 243 Or at 79, this court defined a partnership accounting as a "bookkeeping process whereby debits and credits are balanced or a balance of mutual accounts is struck." A formal partnership accounting includes a "complete and systematic financial review," in which "all activities related to the partnership are subject to scrutiny." Bromberg, II *Bromberg and Ribstein on Partnership*, § 6:08(d) at 6:192, 6:194. Based on plaintiff's own representations, it appears that no bookkeeping, in the sense of a formal review of all partnership transactions, is necessary in this case. The accounts at issue do not appear to be "so complex that justice [could] not be done without resort to

---

[8] Plaintiff prayed, in part, for judgment against defendant for:

"(B) An accounting from defendant pursuant to the partnership agreement; and

"(C) Judgment against defendant for plaintiff's one-half share in any commissions or profits defendant has earned on the designated accounts since the termination of the partnership, or that defendant will receive on any such clients or accounts up until two years from the date the partnership agreement was effectively terminated, plus interest thereon at the legal rate of nine percent (9%) per annum on all commissions and prejudgment profits earned by defendant from the date such commissions were paid to defendant."

* * * an equity court." *Huebener et al v. Chinn,* 186 Or 508, 530, 207 P 1136 (1949). In addition, the record makes clear that the partnership long since had been terminated when plaintiff filed his original complaint. No decree of dissolution is required, and a full review of partnership transactions is unnecessary. At a minimum, this dispute concerns commissions on two sales to the Macdonald family; at most, it concerns any additional commission that plaintiff or defendant failed to share with one another during the two-year period following the termination of the partnership. The gravamen of plaintiff's complaint thus is a demand for a judgment for a specified sum of money determinable without any formal equitable accounting.

In summary, at the time when he filed his original complaint, plaintiff had a right, under ORS 68.650, to bring an action for an accounting. In this case, however, the record indicates that following discovery, before trial, plaintiff knew the amount of his specific money damages and could have moved to amend his complaint at the appropriate time to reflect those damages. Consequently, because the relief sought in the present case is a judgment for a specified sum of money determinable without any accounting, the need for an accounting is obviated. We conclude that the nature of plaintiff's actual claim for relief is legal and that the trial court erred in denying defendant's demand for a jury trial. We are unable to find any basis for equitable jurisdiction under these circumstances.[9]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

.

---

[9] Because we hold that plaintiff's claim is in law, we need not decide the applicability of the unclean hands doctrine to an accounting in equity.