Argued and submitted November 10, 2008, reversed and remanded
November 18, 2009

Robert PREHALL,
*Plaintiff-Appellant,*

*v.*

Paul F. WEIGEL
and Donald Whitaker,
*Defendants-Respondents.*

Douglas County Circuit Court
05CV2304CC; A133563

221 P3d 157

George W. Kelly argued the cause and filed the briefs for appellant.

Terence J. Hammons argued the cause for respondents. With him on the brief was Hammons & Mills.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

The parties organized a limited liability company (LLC), ORS 63.001(17), for the purpose of developing a residential subdivision. Plaintiff later brought this action against defendants for damages for breach of contract, breach of fiduciary duty, fraud, and an accounting. His claims arise out of defendants' alleged wrongful conduct in carrying out the terms of the operating agreements that governed the affairs of the LLC. Plaintiff sought a jury trial. The trial court ruled that plaintiff's claims sounded in equity because they sought equitable relief and, accordingly, denied plaintiff's request for a jury trial. Sitting as the trier of fact, the court found that three of plaintiff's four claims were not well founded and entered a limited judgment dismissing those claims.[1] Plaintiff appeals, raising two assignments of error. Because it is dispositive, we address only his first assignment, in which he contends that the trial court erred in denying his request for a jury trial. We reverse and remand for further proceedings.

As explained more fully below, plaintiff contends that he was entitled to a jury trial under Article VII (Amended), section 3, of the Oregon Constitution, because the claims stated in his complaint were legal in nature. We determine whether a claim is legal or equitable by examining the pleadings. *McDowell Welding & Pipefitting v. US Gypsum Co.*, 345 Or 272, 279, 193 P3d 9 (2008). The facts pertinent to our analysis of plaintiff's first assignment of error consist, therefore, of the allegations set forth in the parties' pleadings, which we now summarize.

The complaint alleged that plaintiff, a real estate broker and developer, found land that was suitable for development into approximately 60 residential lots. Because he lacked adequate financing to pursue the development, plaintiff approached defendants, who were local businessmen with experience in real estate investment, sales, and development, to finance the proposed development. The parties formed PRD, LLC, to develop the property, which they called Plum

---

[1] Only the accounting claim remained pending in the trial court.

Ridge. Under the terms of the LLC's first operating agreement, referred to by the parties as the FOA, plaintiff contributed 48 percent of the capital for the company, and defendants each contributed 26 percent. Plaintiff's capital contribution consisted of his real estate development and sales services, while defendants contributed financing for Plum Ridge to satisfy their combined 52 percent share. Under Article IV of the FOA, net profits were to be distributed to the company members in proportion to their respective interests in the company.

After entering into the FOA, defendants informed plaintiff that, as a condition for providing financing for Plum Ridge, the bank required that defendants have not less than an 80 percent ownership interest in the company. They also told plaintiff that obtaining financing would necessitate modifying the FOA to reflect that defendants had the requisite 80 percent ownership interest. As a result, plaintiff and defendants entered into an Addendum and Additional Operating Agreement of: PRD, LLC, which the parties refer to as the second operating agreement or SOA. In a section of the SOA entitled Changes of Ownership, the ownership interests were described as 40 percent in each defendant and 20 percent in plaintiff. Part b of that section further provided that "[a]ll previous agreements are null and void." By operation of Article IV of the FOA, as modified by the SOA, the change in ownership interests also reduced plaintiff's share of the profits from 48 percent to 20 percent. Defendants orally represented to plaintiff, however, that the ownership interest and profit-sharing changes in the SOA were "merely a formality" to accommodate the bank's lending requirements. The parties allegedly orally agreed that, when the bank's loan had been paid, they would reinstate the ownership interests and share of profits and losses set forth in the FOA—namely, 48 percent to plaintiff and 52 percent to defendants.

After entering into the SOA, defendants obtained $1 million in financing from Oregon Pacific Bank. During 2003, and up until the filing of plaintiff's complaint, the LLC undertook the development of the subdivision and sold approximately 57 lots, generating approximately $1.7 million in sale proceeds, and a dispute arose between the parties

concerning the division of those proceeds. Ultimately, the parties entered into a third operating agreement, the TOA, that described the same ownership interests as the SOA, but provided a different formula for the division of profits, not based on ownership. Plaintiff nonetheless filed this complaint, alleging claims arising out of the FOA and the SOA.

In his first claim for relief, for breach of contract, plaintiff alleged that defendants breached an oral agreement, made at the time of the SOA, to reinstate plaintiff's ownership interest and profit share to 48 percent, as set forth in the FOA, when the bank loan had been paid off. Plaintiff alleged that, as a result of defendants' breach, plaintiff was damaged "in a sum to be more precisely determined upon an accounting as herein prayed for," in an amount believed by plaintiff to be "not less than $375,000."

In his second claim, for breach of fiduciary duty, plaintiff alleged that defendants owed him a fiduciary duty as a result of their joint membership in the LLC, defendants' controlling interest in the LLC, and defendants' exclusive responsibility to obtain financing.[2] Plaintiff contended that

---

[2] ORS 63.155 describes an LLC member's duties of loyalty and care to the LLC and other members of the LLC and provides, in part:

"(1) The only fiduciary duties a member owes to a member-managed limited liability company and its other members are the duty of loyalty and the duty of care set forth in subsections (2) and (3) of this section.

"(2) A member's duty of loyalty to a member-managed limited liability company and its other members includes the following:

"(a) To account to the limited liability company and hold for it any property, profit or benefit derived by the member in the conduct and winding up of the limited liability company's business or derived from a use by the member of limited liability company property, including the appropriation of a limited liability company opportunity;

"(b) Except as provided in subsections (5) and (6) of this section, to refrain from dealing with the limited liability company in a manner adverse to the limited liability company and to refrain from representing a person with an interest adverse to the limited liability company, in the conduct or winding up of the limited liability company's business; and

"(c) To refrain from competing with the limited liability company in the conduct of the business of the limited liability company before the dissolution of the limited liability company.

"(3) A member's duty of care to a member-managed limited liability company and the other members in the conduct and winding up of the business of the limited liability company is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of law.

defendants breached that duty when they failed to disclose to plaintiff that the bank did not require that the percentage distribution of profits mirror the members' ownership interests in the company. Plaintiff alleged that, as a result of that breach of duty, he was induced to enter into the SOA, causing him to relinquish his 48 percent share of the profits as provided in the FOA, "all to his damage in a sum to be determined pursuant to the FOA and the accounting requested herein below," but believed by plaintiff to be "not less than the sum of $375,000."

In his third claim, for fraud, plaintiff contended that defendants "intentionally made material misrepresentations to plaintiff" by affirmative statements and nondisclosures or concealments of facts pertaining to the bank's financing requirements. Plaintiff alleged that defendants engaged in that conduct intending that plaintiff enter into the SOA and accept less than the distributive share of profits as provided in the FOA. He contended that he sustained damages as a result of his reliance on defendant's misrepresentations in the amount previously set forth in his complaint.

In his fourth claim, for an accounting, plaintiff contended that defendants have refused to perform their duty to account to plaintiff for the assets of the company, its profits from developing Plum Ridge, and its liabilities, including the Plum Ridge financing costs.

In his prayer, plaintiff sought a judgment "in an amount to be determined pursuant to an accounting * * * and based upon the provisions of the FOA, which sum is not less than $375,000." He further sought costs and disbursements and "such further relief as the court might deem just and equitable under the circumstances."

Defendants answered plaintiff's complaint by admitting having formed the LLC and having entered into the FOA and SOA, but generally denying all pertinent allegations of the claims. Defendants also asserted two affirmative

---

"(4) A member shall discharge the duties to a member-managed limited liability company and the other members under this chapter or under any operating agreement of the limited liability company and exercise any rights consistent with the obligation of good faith and fair dealing."

defenses. In the first, they contended that the parties had entered into the TOA, relating to distribution of profits and losses, which they attached to their answer and incorporated by reference. They further asserted that they had fully performed all of their obligations under the TOA. That agreement recited that the operating agreement "states that the ownership is * * * [defendant] Weigel 40%[,] [defendant] Whitaker 40%[,] and [plaintiff] Prehall 20%." The agreement provides that "the profits or losses will be divided" with defendants receiving the first $500,000, plaintiff the next $250,000, and any remaining profits or losses above $750,000 divided with two-thirds going to defendants and one-third going to plaintiff. The agreement concludes by reciting "that this agreement supercedes [sic] any previous agreement."

In their second affirmative defense, defendants contended that plaintiff's claims for breach of fiduciary duty and fraud were time-barred. Defendants sought dismissal of plaintiff's complaint and for their costs and distributions.

Plaintiff filed a reply, setting forth three separate contentions. First, plaintiff argued that the TOA was not legally enforceable, because it was not supported by adequate consideration. In support of that contention, plaintiff alleged that neither the SOA nor the TOA imposed any new obligations on defendants in addition to defendants' obligations under the FOA and that defendants did nothing in addition to those preexisting obligations.

Second, plaintiff alleged that he was induced to enter the TOA by defendants' material misrepresentations relating to the bank financing requirements. He essentially repeated the allegations of material misrepresentation and nondisclosure set forth in his claims of breach of fiduciary duty and fraud. He contended that, as a result of those misrepresentations and nondisclosures, he entered into the SOA, reducing his profit interest in Plum Ridge from 48 percent to 20 percent. Further, plaintiff alleged that defendants informed him that they did not intend to honor their oral agreement to return plaintiff to his 48 percent profit interest and threatened that, if he did not sign the TOA, they would deny having made any promise to do so and would enforce the 20 percent profit distribution set forth in the SOA. Plaintiff

asserted that defendants thereby used the SOA, which plaintiff had signed due to defendants' misrepresentations, to cause plaintiff to sign the TOA.

Third, plaintiff alleged that he signed the TOA as a result of economic duress. As he alleged earlier, he was given the choice of either signing the TOA or contesting defendants' position that the profit distribution percentages set out in the SOA were enforceable. Plaintiff alleged that, at the time of signing the TOA, he was under economic duress because he had exhausted his own personal finances and had no significant funds from Plum Ridge. Plaintiff alleged that he was "compelled at the time to enter the TOA," that defendants were aware of plaintiff's financial condition, and that they knew or reasonably should have known that their conduct would compel plaintiff to sign the TOA.

Finally, plaintiff filed a reply to defendants' second affirmative defense, denying that the applicable statute of limitations period had expired.

The parties agreed to a bifurcation of the trial, in which plaintiff's claims for breach of contract, breach of fiduciary duty, and fraud, along with defendant's affirmative defenses and plaintiff's reply, would be tried first and separately from the claim for an accounting. The latter claim would be tried only if the parties were unable to reach an agreement as to the profits owed to plaintiff after the outcome of the trial on the first three claims.

Plaintiff requested a jury trial, and defendants objected, contending that plaintiff's claims were equitable in nature and did not entitle him to a jury trial:

> "[T]he thrust of what the plaintiff was trying to do is to avoid the [TOA] and the [SOA]. They're both on their face superseding documents. * * * The only relief that the plaintiff is seeking is to get back to the [FOA], which gives him 40 [sic] percent of the profits. What he's doing is simply trying to avoid both the [TOA] and [SOA], and rescission is entirely an equitable issue for the court and it's not for the jury."

Plaintiff responded that he was not seeking rescission of any agreement. Rather, plaintiff asserted that he

sought damages for defendants' breach of an oral agreement to return to the profit division set out in the FOA and for defendants' breach of fiduciary duty and fraud in inducing plaintiff to sign the SOA.

The trial court accepted defendants' position that plaintiff's claims were, in effect, for rescission of the TOA, concluding, "[T]his is a non-jury matter, and it is for rescission, even though it may not be brightly labeled that way." The first three claims were tried to the court, which accepted defendants' affirmative defense that the TOA superseded the two prior agreements and was the operative agreement between the parties. The court entered a limited judgment dismissing the three claims. The parties stipulated that the trial court retained jurisdiction to resolve disputes that might arise "relating to the accounting process they have agreed to undertake as to Plaintiff's Fourth Claim for Relief."

In his first assignment of error, plaintiff argues that the trial court improperly denied his request for a jury trial, a right secured to him under Article VII (Amended), section 3, of the Oregon Constitution.[3] He contends that, under the Supreme Court's and this court's case law, a plaintiff is entitled to a jury trial when a legal claim is pleaded and that the claims pleaded in his complaint were strictly legal and did not require rescission of the SOA or the TOA. With respect to his breach of contract claim for enforcement of the oral agreement that accompanied execution of the SOA, plaintiff acknowledges that the "superseding" language of the SOA and the TOA might render that claim susceptible to challenge by a motion for summary judgment or for a directed verdict. Nonetheless, plaintiff asserts that those potential obstacles do not render the breach of contract claim equitable in nature. As to his breach of fiduciary duty and fraud claims, plaintiff asserts that he had the choice to either seek rescission of the SOA or to bring an action for damages and that he chose to pursue a claim for damages, to be measured by the difference between what he was entitled to receive under the FOA and what he actually received under the TOA. *See*

_____

[3] Article VII (Amended), section 3, provides, in pertinent part:

"In actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved * * *."

*Bridgmon v. Walker*, 218 Or 130, 134-35, 344 P2d 233 (1959) (one who has been deceived into entering into a contract may, on discovery of the fraud, seek damages for deceit in a court of law). Thus, he contends, he does not seek to rescind the SOA or the TOA and enforce the FOA; rather, the FOA serves to provide the measure of damages only. The TOA, he claims, served at most to mitigate his damages by restoring some of the money to which he would have been entitled under the FOA.

Defendants respond that plaintiff seeks, in essence, rescission of the SOA and the TOA and an accounting, all of which are equitable remedies. Because there is no right to a jury trial in equity, *see Phillips v. Johnson*, 266 Or 544, 549, 514 P2d 1337 (1973), defendants assert that the trial court did not err in denying plaintiff's request for a jury trial.

In reply, plaintiff clarifies why his claims are not equitable in nature:

> "Not only is a rescission not pled, but it is not necessary that there be a rescission in order for plaintiff to receive his damage award. Two of Plaintiff's claims—breach of fiduciary duty and fraud—can be made even while leaving the second and third operating agreements in place. The essence of those claims is that, by way of breaching their fiduciary duty and intentionally withholding information from plaintiff, defendants induced plaintiff to sign the second operating agreement and caused him to lose the money he would otherwise have received under the first agreement. The claims do not ask that the first operating agreement be restored (by rescinding the second and third agreements); they ask that plaintiff be given the damages that the breach and the fraud have caused him. As for the third claim—a claim for defendants' breach of their oral contract to eventually restore to plaintiff the profits he had been entitled to receive under the first operating agreement—while it is possible that that claim could be disposed of by way of a directed verdict (since the second and third agreements speak of superseding all former agreements), such an outcome is a matter separate from plaintiff having pled, nor not having pled, an entitlement to rescission."

We agree with plaintiff that the pleadings do not raise equitable claims or remedies that must be tried to the

court and that the trial court therefore erred in denying his request for a jury trial. The right to a jury trial is guaranteed under the Oregon Constitution in those classes of cases in which the right was customary at the time the constitution was adopted and does not extend to cases that would have be tried in equity. *McDowell Welding & Pipefitting*, 345 Or at 279. Whether plaintiff's claims are legal or equitable is determined by examining the pleadings. *Id.* (citing *Thompson v. Coughlin*, 329 Or 630, 637-38, 997 P2d 191 (2000)). In examining the pleadings, the court determines whether the pleadings present a cause of equitable or legal cognizability. *Id.* Even when equitable relief is pleaded, however, if adequate relief may be obtained in law, then the equitable jurisdiction of the court will not be invoked. *McDowell Welding & Pipefitting*, 345 Or at 279-80; *Thompson*, 329 Or at 637-38. Applying that standard here, it is clear that the claims presented to the trial court in the bifurcated trial were legal and, to the extent that the pleadings may have proposed equitable remedies, it was not necessary for the court to invoke its equitable jurisdiction to try them, because adequate relief may be obtained in law.

■ As an initial matter, it appears not to be in dispute that the claims pleaded in the complaint—breach of contract, breach of fiduciary duty, and fraud—are legal. Defendants' primary contention on appeal is that the relief sought by plaintiff is equitable. However, the complaint explicitly requests money damages on each claim, which is a legal remedy. *Amer. Timber/Bernard v. First Nat'l*, 263 Or 1, 11, 500 P2d 1204 (1972) (a request for a money judgment is legal, not equitable); *see also Parthenon Construction & Design, Inc. v. Neuman*, 166 Or App 172, 185, 999 P2d 1169 (2000) (legal remedies include money damages). Contrary to defendants' contention, plaintiff's claims do not, in effect, seek to rescind the SOA or the TOA. Rather, plaintiff accepts the SOA as binding, but seeks damages resulting from defendant's alleged wrongful conduct in inducing plaintiff to enter into the SOA and breach of a concurrent *oral* agreement to revert to the profit-sharing arrangement set forth in the FOA. We agree with plaintiff that the complaint refers to the FOA not for the purpose of reinstating it and rescinding the SOA, but

as a measure of plaintiff's damages for defendants' wrongful conduct. The TOA is not even mentioned in the complaint.

■■ We also reject defendants' contention that plaintiff's request for an accounting and "such further relief as the court might deem just and equitable" converted the claims into equitable claims. In the first place, as the Supreme Court has said many times, the fact that a complaint mentions an accounting or includes a request for equitable relief ancillary to a legal claim does not convert an action into an equitable claim. *See, e.g., Thompson,* 329 Or at 638 (citing *Nelson and Smith,* 157 Or 292, 300, 69 P2d 1072 (1937)); *Lieuallen v. Heidenrich,* 259 Or 333, 335, 485 P2d 1230 (1971). Here, plaintiff sought an accounting to determine the exact amount of his damages, which he alleged were based on the difference between the profits that plaintiff had actually received and the profit division prescribed by the FOA, and "not less than $375,000."

Moreover, the requested accounting was not the type of accounting that sounds in equity, in which "the account is so complex that justice cannot be done without resort to the superior equipment of the equity court." *Flaherty v. Bookhultz,* 207 Or 462, 465, 291 P2d 221 (1955) ("This court has long recognized a clear distinction between the right to an accounting at law and the right to an accounting in equity."); *see also Cary v. Hays,* 243 Or 73, 76-77, 409 P2d 899 (1966) (although a claim for damages for misrepresentation prayed that defendants "be required to account," a formal accounting was not required). Plaintiff simply requested that his damages be calculated based on an accounting of what his profits would have been if they had been determined under the profit sharing percentages set forth in the FOA. We conclude that plaintiff's request for an accounting as a method of determining his damages did not convert his legal claims into equitable claims.

■ Having thus determined that plaintiff's complaint pleads legal claims, we move on to consider defendants' argument that, when read in light of plaintiff's reply to their affirmative defenses, plaintiff's claims nonetheless should be characterized as equitable in nature. Defendants' affirmative

defenses raised only legal issues. It is undisputed that defendants' statute of limitations defense is a legal defense. And if, as defendants alleged, the TOA superseded that portion of the SOA relating to the distribution of profits as a novation, a substitute contract, or an accord and satisfaction, any of those is cognizable in a court of law. *McDowell Welding & Pipefitting*, 345 Or at 281. However, defendants contend that plaintiff's attempt to avoid the TOA by asserting a failure of consideration and fraud or duress is, in effect, a claim for rescission of the TOA and that the trial court therefore correctly and necessarily resolved that issue, which was dispositive of plaintiff's claims, without a jury.

■ We reject defendants' contention for several reasons. First, the pleadings do not show that the TOA must necessarily be rescinded in order for the court to award relief on plaintiff's claims for fraud and breach of fiduciary duty. A party complaining of fraud in the inducement of an agreement does not waive the fraud claim by entering into a subsequent agreement, unless the second agreement is intended to act as a waiver of the claim of fraud and the party receives a substantial concession in the second agreement based on the claim of fraud. *Mount Joseph Cattle Co., Inc. v. Makin Farms, Inc.*, 180 Or App 27, 34, 42 P3d 331 (2002). Here, there is no basis in the pleadings for a finding that the TOA was executed as a waiver of plaintiff's fraud claim. A similar analysis applies to the breach of fiduciary duty claim. There is nothing in the pleadings that suggests that the TOA was intended to address plaintiff's concerns that defendants had breached their fiduciary duty to him. We conclude that plaintiff did not waive his fraud and breach of fiduciary duty claims by signing the TOA and was entitled to a jury trial on those claims.

■ A slightly different analysis applies to the breach of contract claim. As plaintiff acknowledges, the breach of contract claim is indeed vulnerable to legal attack on the ground that the TOA superseded the alleged oral agreement. However, as previously discussed, such an argument would be cognizable as a legal challenge; defendants' assertion that the TOA superseded the alleged oral agreement does not convert plaintiff's breach of contract claim into an equitable

claim for rescission of the TOA. Contrary to defendants' contention, the pleadings demonstrate that plaintiff's arguments in avoidance of the TOA do not affirmatively assert a separate remedy of rescission—they simply further the breach of contract claim. If, in fact, the TOA by its terms superseded the oral agreement, then the breach of contract claim must fail as a matter of law; if, however, as plaintiff contends, the TOA did not supersede the alleged oral agreement, then that does not mean that the TOA is rescinded—it simply does not operate to prevent plaintiff from recovering damages for breach of the oral agreement.

Finally, because plaintiff's claims do not require rescission of the SOA or the TOA, we conclude that plaintiff's requested remedy of damages on each of his claims is a complete remedy that provides adequate relief at law and makes it unnecessary for the court to invoke its equitable jurisdiction. *See Thompson*, 329 Or at 638. For all of the above reasons, we conclude that the trial court erred in denying plaintiff's request for a jury trial on his claims of breach of contract, breach of fiduciary duty, and fraud.

Reversed and remanded.