MARTIN VERY, PLAINTIFF IN ERROR, *v.* GEORGE C. WATKINS.

Where a surety upon a bond is sued, a conversation between his co-surety (now dead) and a third person is not admissible in evidence for the purpose of fixing a liability upon the defendant. The co-surety, if alive, would not himself have been a good witness.

A paper in the handwriting of the co-surety, offered to impeach the testimony of two witnesses, was not admissible.

Where a levy is made upon goods and chattels under a fi. fa., the officer may confide them to another, for safe keeping, until there has been a settlement of the

judgment and payment of all costs. He may, therefore, leave them in the hands of a receiver appointed by the court.

Where the receiver had the custody of goods, and the complainant was ordered to select such a portion of these goods as would pay his claim by a decree of the court below, which was affirmed by this court, and which he refused to do, and this portion was accordingly set apart, the receiver became from that time a trustee for the complainant.

The receiver was entitled to hold this property, as trustee, until a demand was made upon him in proper form by the complainant to surrender it. This proper form should have been under a certified copy of that part of the decree which permitted the complainant to demand the property, and which required the receiver to surrender it with the complainant's acknowledgment of its receipt. These papers should then be filed in court, for the protection of the trustee.

THIS case was brought up by writ of error from the Circuit Court of the United States for the eastern district of Arkansas. The case is stated in the opinion of the court.

It was submitted on printed arguments by *Mr. Stillwell* for the plaintiff in error, and by *Mr. Watkins* for the defendant.

The arguments of the counsel were so connected with the facts of the case, that it would be difficult to give a faithful account of them without an extensive statement of the facts.

Mr. Justice WAYNE delivered the opinion of the court.

On the 3d March, 1841, at Little Rock, Arkansas, one James Levy gave his obligation with a mortgage for $4,000, with interest, due six years after date, to one Darwin Lindsley, who soon after assigned the obligation to Martin Very, the plaintiff in error. In March, 1843, Levy paid to Very $2,000, and at the same time executed a promise, in writing, to pay the residue of the debt in jewelry and other wares, which Very agreed to receive in payment, to be selected within a year from that time, from Levy's stock of goods. Very refused to perform the agreement, and in 1848 brought an action on the original obligation, to which Levy pleaded the agreement by way of accord and satisfaction, with an offer to perform on his part. The Supreme Court of Arkansas, on an appeal, held it to be in equity

a clear accord and satisfaction, upon a good consideration, be . cause the creditor by that arrangement received payment of nearly half of the debt in advance, and because the residue was to be paid almost four years before the debt became due. In the mean time, Very brought a bill to foreclose the mortgage in the Circuit Court of the United States for the district of Arkansas, to which Levy set up the same defence by way of answer. In April term, 1850, the court sustained the defence of Levy, and decided that Very should select from the stock of goods in question a sufficient amount according to their value, on the 3d March, 1844, to satisfy the rest of the debt. It then became necessary to appoint a receiver in the cause. John M. Ross was appointed receiver, and gave a bond, with E. Cummins and George C. Watkins as securities, in the penal sum of $5,000, with the condition that he would. faithfully discharge his duties as receiver, with respect to such goods as might be brought into court, and that he would carefully keep and dispose of them in conformity with such order and decree as the court might make in that suit.

In consequence of Very's refusal to abide by his agreement, Levy was obliged to keep his stock of goods on hand to tender them to Very, according to the agreement. But Levy had other creditors, who seized upon the same goods in execution, and they were in possession of the sheriff when Ross was made receiver, and from the sheriff he received them. The next step was an order from the district judge, directing Very to select from a box of jewelry in the hands of the receiver such an amount, according to the value of the goods in March, 1843, as would be sufficient to discharge the balance of the debt due to him. This he refused to do, and then the clerk of the Supreme Court of Arkansas was directed, with the assistance of two skilful and disinterested persons, to make a selection from the goods for Very.

It was done. A report was made, that the value of the goods in March, 1844, had been $5,777, and that according to that value a selection had been made to the amount of $2,002.59, to pay Very's claim upon Levy, and that the goods had been set apart for that purpose, with an inventory. A

final decree was then made, authorizing Levy to withdraw the remainder of the goods from the hands of the receiver, adjudging also that Very should take the selected goods in payment of the residue still due upon the bond and mortgage, and that Ross, the receiver, should deliver them to him on demand. Very refused to abide by that decree, and prosecuted an appeal to this court. Here the decree of the court below was affirmed. On its return, Very refused to pay the costs. Levy had to pay them in order to get a mandate from this court to carry its decree into execution. Under these circumstances, Levy sued out a writ of execution, and directed it to be levied on the goods belonging to Very, still in the hands of Ross. The receiver and the marshal returned it without further action on the wirt. A venditioni exponas was then issued, and the goods were sold by the marshal for $260, the full value of them at that time, in their then condition. Three years and six months passed, and then Very, having acquiesced all of that time in what had been done, commenced this suit to recover from Watkins, as the security of Ross, damages for a breach of his bond, alleging that he had carelessly kept the jewelry which had been in his possession as receiver, and for not having surrendered it to him when he demanded it, as under the decree of the court he had a right to do.

Watkins filed three pleas to this action. The first is a detailed narrative of the proceedings in the suit between Very and Levy to the appointment of Ross as receiver, and showing that, by the decree, Very had been required to receive, in satisfaction of the debt due to him by Levy, jewelry to the amount of $2,002.59; and that from that decree they had appealed to the Supreme Court of the United States, where the decree of the court below had been affirmed with costs. Very *v.* Levy, 13 How., 345. And further stating, that Levy had paid the costs of the suit in the Supreme Court, and that the jewelry, still being in the hands of Ross, had been levied upon and sold by the marshal, and that the proceeds of it were applied to the repayment of Levy of the costs, which Very was bound to pay by the decree.

Watkins, in his second plea, denied that the jewelry had

been injured from the careless keeping of Ross; and his third plea is a denial that Very had ever demanded it from Ross.

Upon the trial of the case, the plaintiff excepted to the rulings of the court, as well for excluding as for admitting testimony.

We have examined with some pains the plaintiff's assignments of error, without finding cause for sustaining either of them. The first is, that the court refused to permit a witness to testify to a conversation between himself and Cummins, the co-surety of Watkins, for the purpose of fixing upon the latter a liability in this action to the plaintiff. It seems that Watkins was not present at that conversation. Whatever it may have been, it was inadmissible; and had Cummins been alive, and had been called as a witness to narrate it, he would not have been á competent witness to fix upon his co-surety a separate liability for an alleged breach of the bond by their principal, for which they had made themselves mutually responsible. The argument of the counsel for the defendant in error is unanswerable upon this point.

The second, third, fourth, fifth, and sixth assignments of error are complaints because the court admitted evidence directly pertinent to the issues which had been made by the pleadings, and defensive as to the imputed negligence of Ross in keeping the goods committed to him as receiver, and as to their condition, quality, and value, when they were turned over to him under the order of the court; and as to their condition when it was levied upon by the marshal to pay the costs of the Supreme Court.

The seventh assignment of error was the refusal of the court to admit a paper in the handwriting of Cummins, the deceased co-surety of the defendant, to show that the testimony of the other witnesses, Dort and Kirk, was not consistent with the appraisement which they had made, pursuant to the order of the court. It was clearly inadmissible.

The eighth and ninth assignments of error relate to the levy upon the jewelry by the deputy marshal; and the court is asked to instruct the jury: "If the levy was made without seeing the jewelry and taking it into possession, they should

disregard it as any evidence of any levy; as, in law, a levy upon personal property—which jewelry is—cannot be made without having a sight of it, and taking possession thereof."

The court refused the instruction as asked; but said to the jury, that to make a valid levy on goods and chattels on a writ of fi. fa., if the officer charged with the duty has a view of them, and they are in his power, and he declares that he makes a levy or seizure of them in execution, such is a valid levy, without taking them into his possession.

The objection to this instruction seems to be, that there had been an insufficient seizure, because the officer did not take manual possession of the box containing the jewelry, but left it in the keeping of Ross, who had pointed it out to him when he came to make the levy. But the evidence establishes that a levy was made by the officer, and that he returned the execution to the marshal, for further proceedings upon it.

It cannot be implied that the levy was incomplete, on account of the box having been left where it was when the levy was made, where it had been kept by Ross whilst he continued to be receiver, and where it remained afterwards, from Very not having demanded it, as he had a right to do and should have done.

After a levy has been made with a fi. fa. upon goods and chattels, the officer may confide them to another person for safe keeping, until there has been a settlement of the judgment and payment of all costs.

The court, in giving this instruction to the jury, went further than it was necessary to do, without, however, having interfered with the right of the jury to find from the evidence whether or not a levy had been made.

The tenth assignment of error relates to the instruction of the court, that by the decree of the court below in August, 1850, and the affirmance of it by this court in 1851, Ross ceased to act as receiver, and from thenceforth held the jewelry in question only as the trustee of Very. That decree put an end to the controversy, excepting to what remained to be done under the mandate of the court for the execution of its decree. It is true that Ross, as receiver, had not been dis-

*Very v. Watkins.*

charged by a formal order upon motion when the decree was made; but it is also true that the jewelry, by the decree, was made the property of Very, and that he could have demanded it from Ross, and that he could not justifiably have refused to deliver it. It was the property of Very for all purposes, as any other that he owned, or which could have been conveyed to him by any kind of title. It was, as such, liable for his debts. It seems to have been considered by the counsel of Very as liable for the costs of appeal in the Supreme Court, which Very had neglected to pay. Levy, however, paid them, and obtained an execution against Very for his reimbursement, which was as well leviable upon this property still in the possession of Ross as upon any other. It was allowed by him voluntarily to remain where the law had placed it, without having made any proper demand for it under the decree. We do not consider the application for it by Mr. Fowler, as the attorney of Very, a proper demand. Mr. Fowler's relation to him was not that special attorneyship which authorized him to demand it in the manner that he did. No doubt that both Mr. Cummins himself and Mr. Fowler thought themselves empowered, as attorneys in the suit, to withdraw it from Ross, to make a private sale of it for the payment of the costs due by Very.

But Ross had responsibilities in the matter under the decree, which gave him the right to withhold it from the counsel of one of the parties, until a demand was made upon him, according to what the course of equity practice requires to be done under such decrees. It matters not what causes he may have assigned to Mr. Fowler for not delivering the jewelry to him, for, in a controversy to make the security of Ross liable for an alleged breach of his bond, the former is entitled to have the benefit of any irregularity which his principal could have resisted. According to the practice in equity, under such a decree as this is, authorizing Very to demand the jewelry, the demand should have been made under a certified copy of that part of the decree, at least, permitting Very to demand the property, and requiring Ross to surrender it, with a receipt upon it, either by Very or by his attorney, that the

goods were surrendered by Ross. Upon the return of such a certificate, the court would have directed it to be put on file with the other papers in the suit, as a voucher for the protection of Ross from further responsibility to the parties, and as evidence that its decree in that particular had been executed. Such a course is not merely a form, to be followed or not, as parties to such a decree may please, but it is a cautionary requirement, to prevent further litigation, by exactness in the performance of a decree in equity. Had it been observed in this instance, this suit would not have been brought.

The instruction as given is in conformity with the decree. Having examined every assignment of error, we shall direct the judgment of the court below to be affirmed.