Argued and submitted November 7, 2007, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings September 18, 2008

McDOWELL WELDING & PIPEFITTING, INC.,
an Oregon corporation,
*Petitioner on Review,*

*v.*

UNITED STATES GYPSUM COMPANY,
a Delaware corporation;
Port of St. Helens,
an Oregon municipal corporation;
BE&K Construction Co., Inc.,
an Alabama corporation,
*Respondents on Review,*

*and*

E C COMPANY,
dba Electrical Construction Co.,
*Defendant.*

UNITED STATES GYPSUM COMPANY,
a Delaware corporation;
BE&K Construction, Co., Inc.,
an Alabama corporation,
and Port of St. Helens,
an Oregon municipal corporation,
*Respondents on Review,*

*v.*

McDOWELL WELDING & PIPEFITTING, INC.,
an Oregon corporation,
*Petitioner on Review.*

(CC 01-2126; CA A125459; SC S054626)

193 P3d 9

James T. McDermott, of Ball Janik LLP, Portland, argued the cause and filed brief for petitioner on review. With him on the brief were Bruce H. Cahn and Aaron D. Goldstein.

Daniel K. Reising, of Fucile & Reising LLP, Portland, argued the cause and filed the brief for respondents on review United States Gypsum Company and BE&K Construction Co., Inc.

No appearance for respondent on review Port of St. Helens.

Walter J. Ledesma, of Klein, Hand and Ledesma, P.C., Woodburn, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Janet Metcalf, Assistant Attorney General, Salem, filed the brief for *amicus curiae* State of Oregon.

KISTLER, J.

## KISTLER, J.

Plaintiff brought this action, alleging that defendants had failed to pay for work that plaintiff had done on a construction project. Defendants denied that allegation and alleged, as an affirmative defense, that plaintiff had agreed to release its claims against defendants in return for defendants paying plaintiff $896,000. Defendants also counterclaimed for specific performance of that settlement agreement. On defendants' motion, the trial court bifurcated the trial and agreed to try defendants' counterclaim for specific performance of the settlement agreement before trying plaintiff's claims for breach of the construction contract.

The primary question that this case presents is whether plaintiff has a state constitutional right to a jury trial on the factual issues that defendant's counterclaim raised. The trial court concluded that plaintiff had no such right and, sitting as the trier of fact, found that plaintiff had accepted defendants' offer to settle its claims and entered judgment accordingly. A divided Court of Appeals affirmed the trial court's judgment. *McDowell Welding & Pipefitting v. US Gypsum Co.*, 209 Or App 441, 149 P3d 173 (2006). We allowed plaintiff's petition for review and now affirm the Court of Appeals decision on plaintiff's jury trial claim but reverse its decision on a subsidiary issue regarding prejudgment interest.

The relevant facts can be summarized briefly. Defendant United States Gypsum (US Gypsum) was constructing a new plant in Columbia County. Defendant BE&K Construction Co. (BE&K) was the general contractor on that project. BE&K subcontracted with plaintiff to perform work on the project. During construction, defendants asked plaintiff to perform additional tasks, over and above plaintiff's contractual obligations, and defendants promised to pay plaintiff for doing so. After plaintiff completed its work on the project, the parties disagreed over the amount that defendants owed for the additional work that plaintiff had performed.

Plaintiff filed this action against defendants, alleging breach of contract and related claims. All of plaintiff's

claims arose out of the modification to the construction contract. BE&K's answer included an affirmative defense captioned "Compromise and Settlement," alleging that plaintiff had agreed to settle its claims against defendants. Specifically, defendants alleged:

"112.

"On February 22, 2001, Dan McDowell, President and owner of [plaintiff], agreed to a settlement of all the claims against BE&K and US Gypsum in connection with the US Gypsum construction project.

"113.

"The settlement provided for US Gypsum to pay [plaintiff] the total of $896,000, including direct payments to [plaintiff's] unpaid subcontractors and suppliers, in exchange for a release of the claims [that plaintiff] is now pursuing against BE&K.

"114.

"The agreement reached between the parties on February 22, 2001 was a compromise of [plaintiff's] disputed and unliquidated claims against US Gypsum and BE&K."

BE&K also included a counterclaim captioned "Declaratory Judgment and Specific Performance of Settlement Agreement." That counterclaim stated: "As alleged above, on February 22, 2001, the parties reached a compromise and settlement of [plaintiff's] claims."

BE&K filed a motion asking the trial court to bifurcate the proceedings and try its counterclaim before trying plaintiff's claims against it. BE&K reasoned that, if the trial court found that plaintiff had agreed to settle its claims, that determination would obviate the need to try plaintiff's breach of contract claims against BE&K and US Gypsum. BE&K also argued that, because its counterclaim sought specific performance, the court rather than a jury should resolve the factual issues that the counterclaim raised. The trial court granted BE&K's motion.

After the trial court granted BE&K's motion, plaintiff filed a demand for a jury trial, which BE&K moved to

strike. BE&K reasoned that, because its counterclaim was equitable, plaintiff had no right to a jury trial on the counterclaim. The trial court granted BE&K's motion to strike plaintiff's jury trial demand and, sitting as the trier of fact, found that plaintiff had accepted defendants' offer to settle its claims in return for defendants' promise to pay plaintiff $800,000.[1]

Based on its resolution of defendants' counterclaim,[2] the trial court entered a limited judgment directing defendants to tender $800,000 to the court clerk and directing plaintiff, after defendants tendered that sum, to execute releases of its claims against defendants. After the trial court entered the limited judgment, defendants tendered $800,000 to the court clerk and then moved for summary judgment on plaintiff's claims against them. The trial court granted defendants' motion and entered a general judgment that dismissed plaintiff's claims with prejudice.

On appeal, plaintiff argued, among other things, that the trial court had erred in denying its jury demand on the question whether it had accepted defendants' settlement offer. As noted, a divided Court of Appeals affirmed. The majority started from the proposition that plaintiff had not assigned error to the trial court's ruling bifurcating the trial and agreeing to try defendants' counterclaim first. *McDowell Welding & Pipefitting*, 209 Or App at 445-46. Rather, plaintiff had assigned error only to the trial court's ruling striking plaintiff's demand for a jury trial. *Id.*[3] On that issue, the majority explained that this court and the Court of Appeals

---

[1] Although defendants alleged that they promised to pay plaintiff $896,000 in return for plaintiff's promise to release its claims against them, defendants proved and the trial court found that defendants had promised to pay only $800,000.

[2] After plaintiff filed its complaint, US Gypsum filed for bankruptcy and the case proceeded only against BE&K. Midway through the proceeding, the bankruptcy court lifted the automatic stay. US Gypsum adopted BE&K's pleadings and participated in the bifurcated trial on what became both defendants' counterclaim.

[3] The Court of Appeals majority understood the dissent to be arguing that Article I, section 17, which guarantees the right to a jury trial in civil cases, required the trial court to try plaintiff's claims before defendants' counterclaim. Starting from that understanding, the majority found it significant that plaintiff had not assigned error to the ruling bifurcating the trial and agreeing to try plaintiff's claims second. *See McDowell Welding & Pipefitting*, 209 Or App at 446 ("[T]he 'big picture' questions raised and resolved by the dissent simply are not in play.").

have held that there is no constitutional right to a jury trial on a claim for specific performance of a settlement agreement. *Id.* at 447. It followed, the majority reasoned, that the trial court had correctly denied plaintiff's jury demand for a trial on that claim. *Id.*

The dissent took a different tack. The dissent did not disagree that plaintiff had no right to a jury trial on defendants' counterclaim. The dissent, however, would have held that plaintiff had a right to a jury trial on defendants' affirmative defense; that is, the dissent concluded that defendants' affirmative defense would have been legal rather than equitable when the Oregon Constitution was adopted.[4] *Id.* at 473 (Armstrong, J., dissenting). Following the reasoning in *Beacon Theatres, Inc. v. Westover*, 359 US 500, 79 S Ct 948, 3 L Ed 2d 988 (1959), the dissent would have held that, when a legal claim (defendants' affirmative defense) and an equitable claim (defendants' counterclaim) share common factual issues, Article I, section 17, of the Oregon Constitution requires courts to try the legal claim before the equitable one. 209 Or App at 461-63 (Armstrong, J., dissenting).[5] It followed, the dissent reasoned, that the trial court erred in trying defendants' counterclaim before their affirmative defense.

On review, plaintiff renews its argument that the trial court erred in striking its demand for a jury trial. As we understand plaintiff's argument, it entails two separate but

---

[4] In reaching that conclusion, the dissent observed that the settlement agreement, as alleged, could be either an executory accord or a substituted contract. 209 Or App at 470 (Armstrong, J., dissenting). The dissent noted that, when the Oregon Constitution was adopted, an executory accord could be enforced only in equity while a substituted contract was a legal defense. *Id.* at 468. Applying certain evidentiary presumptions and resolving perceived ambiguities in favor of a jury trial, the dissent would have held that defendants' affirmative defense alleged a substituted contract, not an executory accord, and thus presented a legal claim to which the state constitutional right to a jury trial attached. *Id.* at 472-73.

[5] The dissent refers to defendants' affirmative defense as if it were part of plaintiff's claims and also refers to trying plaintiff's claims before trying defendants' counterclaim. *See, e.g.,* 209 Or App at 463 (Armstrong, J., dissenting). As explained below, defendants' affirmative defense is not part of plaintiff's claims; rather, it is a defense to those claims and arises out of a separate agreement. The relevant comparison, for the purposes of *Beacon Theatres*, is between defendants' affirmative defense and their counterclaim, and we understand the dissent's reasoning ultimately to turn on that comparison.

related questions. The first question is whether plaintiff had a state constitutional right to a jury trial on defendants' counterclaim for specific performance of the settlement agreement. If plaintiff did not have a right to a jury trial on the counterclaim, the remaining question is whether plaintiff had a right to a jury trial on defendants' affirmative defense (which also is based on the settlement agreement) and, if it did, whether the trial court should have tried the affirmative defense to a jury before trying the counterclaim to the court. We begin with the question whether plaintiff had a right to a jury trial on defendants' counterclaim.

■   Two provisions of the Oregon Constitution bear on that question. Article I, section 17, of the Oregon Constitution provides: "In all civil cases the right of Trial by Jury shall remain inviolate." Article VII (Amended), section 3, provides in part that, "[i]n actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved." Reading those provisions together, this court has explained that Article I, section 17, "guarantees a jury trial 'in those classes of cases in which the right [to a jury trial] was customary at the time the [Oregon] [C]onstitution was adopted or in cases of like nature.'" *Lakin v. Senco Products, Inc.*, 329 Or 62, 69, 987 P2d 463 (1999) (quoting *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295, 744 P2d 992 (1987)). The right to a jury trial, however, does not extend to cases that would have been tried to an equity or an admiralty court in 1859. *See State v. 1920 Studebaker Touring Car et al*, 120 Or 254, 259, 261-62, 251 P 701 (1927).

■   To determine whether a claim is legal or equitable, the court looks to the pleadings. *See Thompson v. Coughlin*, 329 Or 630, 637-38, 997 P2d 191 (2000) (test for determining whether jurisdiction is in law or equity generally turns on the nature of the relief sought in the pleadings); *Huebner v. Chinn*, 186 Or 508, 519, 207 P2d 1136 (1949) (in deciding whether Article I, section 17, jury trial right applies, court must "determine whether the pleadings presen[t] a cause of equitable [or legal] cognizance"). The label that a party places on a claim is not necessarily dispositive. *See Thompson*, 329 Or at 638 (so holding). For example, the plaintiff in *Thompson* sought an accounting to resolve a dispute among partners, which is ordinarily an equitable claim that would

not entitle a party to a jury trial. However, in determining whether the plaintiff's claim should have been tried to a jury, this court explained that it had long recognized that, when "adequate relief may be obtained in law, * * * equitable jurisdiction will not be invoked." *Id.* Because the "accounting" that the plaintiff sought in *Thompson* involved only two transactions, the court concluded that a legal action provided adequate relief, that the plaintiff's claim was not equitable, and that the trial court had erred in denying the plaintiff's demand for a jury trial. *Id.* at 640.

■ In arguing that, under *Thompson*, it is entitled to a jury trial on defendants' counterclaim, plaintiff does not dispute that "suits in equity, including suits for specific performance of contracts, are ordinarily to be tried to a court without a jury and that the constitutional right to trial by jury does not apply to suits in equity." *See Phillips v. Johnson*, 266 Or 544, 549, 514 P2d 1337 (1973) (so holding). Plaintiff argues, however, that specific performance is available only when the remedy at law is inadequate and that, in this case, defendants have an adequate remedy at law. *Cf. Thompson*, 329 Or at 638-40 (reaching a similar conclusion regarding the plaintiff's request for an accounting). In plaintiff's view, a declaratory judgment that the parties had entered into a settlement agreement would suffice to give effect to the settlement agreement, that claim would have been cognizable at law, and the equitable remedy of specific performance therefore was not necessary. It follows, plaintiff concludes, that the trial court erred in denying its demand for a jury trial despite the fact that defendants sought specific performance of the settlement agreement.

We note, as an initial matter, that plaintiff's argument is at odds with this court's practice. This court repeatedly has entertained suits for specific performance of settlement agreements without suggesting that resort to equity was unnecessary because the parties had an adequate remedy at law. *See Michel v. ICN Pharmaceuticals*, 274 Or 795, 797, 549 P2d 519 (1976) (determining on *de novo* review, in a suit for specific performance of a settlement agreement, whether the parties had entered into an enforceable settlement agreement); *Brown v. Denton*, 257 Or 161, 162, 477 P2d

710 (1970) (same); *Chambers v. Zipper*, 225 Or 333, 334, 357 P2d 1105 (1960) (same). Those decisions, however, did not expressly consider the argument that plaintiff raises here. And, while those decisions may suggest an answer, we hesitate to give them controlling effect without examining the premises of plaintiff's argument more closely. *See Coast Range Conifers v. Board of Forestry*, 339 Or 136, 148-49, 117 P3d 990 (2005) (declining to give controlling effect to an unconsidered assumption in a prior decision). We accordingly turn to the question that the dissenting opinion in the Court of Appeals addressed—whether an action to enforce the settlement agreement that defendants alleged would have been cognizable in law or equity when the Oregon Constitution was adopted.

■■ As we discuss more fully below, a settlement agreement may take one of three forms: an executory accord, an accord and satisfaction, or a substituted contract. As we also discuss below, when the Oregon Constitution was adopted, only a court of equity would enforce an executory accord. The law courts would not enforce executory accords because they suspended the underlying obligation; they did not discharge it. By contrast, an accord and satisfaction and a substituted contract discharged the underlying obligation, albeit for different reasons, and both were enforceable in the law courts. It follows that the question whether the agreement that gave rise to defendants' counterclaim would have been cognizable in law or equity turns, at least initially, on whether it is an executory accord, an accord and satisfaction, or a substituted contract. We first describe the distinctions among those types of settlement agreements before considering which type of settlement agreement defendants alleged.

■■ An executory accord is "an agreement for the future discharge of an existing claim by a substituted performance." Arthur Linton Corbin, 6 *Corbin on Contracts* § 1268, 71 (2d ed 1962). Usually, an executory accord is a bilateral agreement; the debtor promises to pay an amount in return for the creditor's promise to release the underlying claim. When the parties enter into an executory accord, the underlying claim "is not [discharged] until the new agreement is performed. The right to enforce the original claim is merely suspended,

and is revived by the debtor's breach of the new agreement." *Savelich Logging v. Preston Mill Co.*, 265 Or 456, 462, 509 P2d 1179 (1973).

■■ Because an executory accord does not discharge the underlying claim but merely suspends it, the law courts refused to allow it to be pleaded as a bar to the underlying claim. *See* Samuel Williston, 15 *Williston on Contracts* § 1842, 520 (3d ed 1972) (describing basis for that conclusion); *Smith v. Foster*, 5 Or 44, 46 (1873) (executory accord was not cognizable as a defense at law); *Ford v. Beech*, 116 Eng Rep 693, 698-701 (1848) (same). Only the equity courts would enforce executory accords. *See* 6 *Corbin on Contracts* § 1273 (so stating); *Very v. Watkins*, 18 Ark 546, 552 (1857), *aff'd*, 64 US 469, 16 L Ed 522 (1860) (recognizing that executory accords were "strictly of equitable cognizance"); *Beech v. Ford*, 68 Eng Rep 85, 88 (1848) (holding that, unlike the law courts, equity courts could give effect to executory accords; they could suspend the underlying obligation and then revive it if the debtor breached his or her promise).

Once the promised performance occurs, the accord has been executed or satisfied and the underlying claim is discharged, resulting in an accord and satisfaction. *See State ex rel. v. Funk*, 105 Or 134, 152, 199 P 592, 209 P 113 (1922) (explaining accord and satisfaction); 6 *Corbin on Contracts* § 1276 at 115 (same).[6] Because an accord and satisfaction discharges the underlying claim, that defense is legal, not equitable. 6 *Corbin on Contracts* § 1276 at 115; *see Smith*, 5 Or at 46 (explaining that the defendant's allegations were insufficient to allege a bar to a legal action because the defendant had alleged an executory accord, not an accord and satisfaction).

---

[6] An accord and satisfaction may occur in one of two ways:

"The two parties may first make an accord executory, that is, a contract for the future discharge of the existing claim by a substituted performance still to be rendered. When this executory contract is fully performed as agreed, there is said to be an accord and satisfaction, and the previously existing claim is discharged. It is quite possible, however, for the parties to make an accord and satisfaction without any preliminary accord executory or any other executory contract of any kind. [For example, a] debtor may offer the substituted performance in satisfaction of his debt and the creditor may receive it, without any binding promise being made by either party."

6 *Corbin on Contracts* § 1276 at 115-16 (footnote omitted); *see also Coover v. G & J Electric*, 285 Or 247, 249-50, 590 P2d 720 (1979) (describing two types of accord and satisfaction).

■ Finally, the parties may enter into a substituted contract; that is, the parties may agree to substitute the new agreement for the underlying obligation. 6 *Corbin on Contracts* § 1293 at 185. A substituted contract differs from an executory accord in that the parties intend that entering into the new agreement will immediately discharge the underlying obligation. *See Eagle Industries, Inc. v. Thompson*, 321 Or 398, 408-12, 900 P2d 475 (1995) (summarizing law regarding substituted contracts and novations); *Ohlson v. Steinhauser*, 218 Or 532, 539, 315 P2d 136, 346 P2d 87 (1959) (distinguishing substituted contracts from executory accords); 6 *Corbin on Contracts* § 1293 at 185-88 (describing substituted contracts).[7] A substituted contract discharges the underlying obligation and could be asserted as a bar to an action at law. *See* Samuel Williston, *Accord and Satisfaction*, 17 Harv L Rev 459, 467 (1904).

■ With that background in mind, we turn to the question whether defendants pleaded an executory accord, an accord and satisfaction, or a substituted contract. Here, defendants alleged that they agreed to pay plaintiff $896,000 in exchange for a release of plaintiff's claims against them. Defendants did not allege that they had paid plaintiff the promised sum—an allegation necessary for an accord and satisfaction. *See Harding v. Bell*, 265 Or 202, 210, 508 P2d 216 (1973) (holding that, when one party contends that they discharged the prior obligation, "complete cancellation of the prior obligation is an essential element of [the] defense and must be pleaded by clear expression, not vague allusion"); *Smith*, 5 Or at 46 (party failed to allege satisfaction and thus failed to state a cognizable defense to a legal action). Nor did they allege that, by entering into the settlement agreement, they extinguished the underlying obligation—an allegation necessary to allege a substituted contract. *See Abrahamson v. Brett*, 143 Or 14, 24, 21 P2d 229 (1933) (noting that one essential requisite of a substituted contract is "the extinguishment of the old contract"); *cf. Harding*, 265 Or at 210

---

[7] Corbin explains that:

"[t]he reason that [an executory accord] is not in itself at once operative as a discharge of the claim is that the agreement does not so provide. If it does so provide, it operates accordingly and is a substituted contract."

6 *Corbin on Contracts* § 1269 at 75.

(cancellation of the prior obligation must be pleaded by clear expression). Rather, defendants alleged that plaintiff agreed to release its claims only after defendants made the promised payment. In short, defendants alleged an executory accord.[8]

As noted, the dissenting opinion in the Court of Appeals reached a different conclusion. Applying certain evidentiary presumptions, the dissent concluded that it was ambiguous whether defendants had alleged an executory accord or a substituted contract, an ambiguity that the dissent would have resolved in favor of the right to a jury trial. The difficulty with the dissent's reasoning is that the Oregon Rules of Civil Procedure require a party to allege ultimate facts. *See Davis v. Tyee Industries, Inc.*, 295 Or 467, 476, 668 P2d 1186 (1983) (describing Oregon's fact pleading requirement). In this case, defendants alleged the elements of an executory accord. They did not allege the one key element, "the extinguishment of the old contract," that distinguishes a substituted contract from an executory accord. *Abrahamson*, 143 Or at 24 (noting that one essential requisite of a substituted contract is "the extinguishment of the old contract"); *see Harding*, 265 Or at 210 (stating that pleading requirement). Without that allegation, there is no ambiguity: Defendants alleged an executory accord, not a substituted contract.

Plaintiff, for its part, does not argue that defendants alleged a substituted contract rather than an executory accord. Rather, plaintiff's brief touches on that issue only once. Plaintiff argues that "there is no dispute that [plaintiff's] original cost-overrun claims against BE&K and US Gypsum entitled [plaintiff] to a jury, including the factual determination of the existence of the settlement agreement alleged by BE&K and US Gypsum." The fact that plaintiff's contract claims against defendants would have been cognizable at law when the Oregon Constitution was adopted does

---

[8] We note that the limited judgment that the trial court entered is consistent with an executory accord and inconsistent with an accord and satisfaction and also with a substituted contract. The limited judgment directed defendants to pay $800,000 to the court clerk, which would have been unnecessary if defendants had already satisfied their promise to pay that amount. Similarly, if the parties had entered into a substituted contract, the court would not have conditioned plaintiff's obligation to release its claims on defendants' payment of the funds to the court clerk. Rather, plaintiff's release of its claims would have occurred when the parties entered into the settlement agreement.

not mean that an executory accord, asserted as defense, also would have been cognizable at law. As explained above, precisely the opposite was true. When the Oregon Constitution was adopted, an executory accord was not recognized as a defense to an action at law. It could be enforced only in equity. *See Smith*, 5 Or at 46 (executory accord not a defense to an action at law on a note); *Ford v. Beech*, 116 Eng Rep at 701 (same). It necessarily follows that the substance of defendants' counterclaim, as they have alleged it, sounded only in equity without regard to the nature of the relief that they sought. The trial court correctly rejected plaintiff's argument that it had a constitutional right to a jury trial on an executory accord.

Plaintiff advances an alternative argument. It contends that, even if it had no constitutional right to a jury trial on defendants' counterclaim, it had a right to a jury trial on defendants' affirmative defense. Plaintiff assumes that defendants' affirmative defense presents a legal claim that would have been tried to a jury in 1859. Plaintiff then reasons that, in interpreting Article I, section 17, of the Oregon Constitution, we should follow the United States Supreme Court's interpretation of the Seventh Amendment in *Beacon Theatres*; that is, plaintiff argues that, when a case includes an equitable claim and a legal claim and those claims share common factual issues, Article I, section 17, requires that a court try the legal claim first in order to give effect to the parties' right to a jury trial.

Plaintiff recognizes that the Seventh Amendment does not apply to the states and that we interpret state constitutional provisions independently of their federal counterparts. Plaintiff argues, however, that the Court's reasoning in *Beacon Theatres* is persuasive and urges us to adopt that reasoning in interpreting Article I, section 17. Applying that reasoning, plaintiff argues that the trial court should have tried defendants' affirmative defense to a jury before trying defendants' counterclaim to the court.

The difficulty with plaintiff's argument is its premise. As explained above, both defendants' affirmative defense and their counterclaim allege an executory accord and were cognizable only in equity when the Oregon Constitution was adopted. Contrary to the premise of plaintiff's argument, the

trial court was not faced with a choice between trying a legal defense before an equitable counterclaim. Rather, because defendants' affirmative defense and their counterclaim were both equitable, the principle that plaintiff urges us to adopt from *Beacon Theatres* is inapposite.[9]

There is some suggestion in plaintiff's brief on the merits that the reasoning in *Beacon Theatres* required the trial court to try plaintiff's breach of contract claims, which were concededly legal, before trying defendants' equitable counterclaim. To the extent that plaintiff makes that argument, it fails for three reasons. First, the premise of *Beacon Theatres* is that the legal and equitable claims share common issues of fact. 359 US at 503-04. Plaintiff's breach of contract claim, however, is factually separate from defendants' counterclaim for specific performance of the settlement agreement; the two claims arise out of separate agreements. Plaintiff's breach of contract claim arises from the modification to the construction contract. Defendants' counterclaim, as well as their affirmative defense, arises from the settlement agreement. Without a common factual issue, *Beacon Theatres* does not apply.

The second reason follows from the first. If, as the trial court found, plaintiff agreed to settle its claims (and defendants subsequently performed their part of the settlement agreement), then the executed settlement would obviate any need to try the factually separate question whether plaintiff is entitled to prevail on the underlying agreement. Trying plaintiff's claims for breach of the construction contract first would serve no purpose if, as the trial court found, plaintiff promised to release those claims as part of a later settlement agreement.

Third, as the Court of Appeals majority observed and as plaintiff has not disputed, plaintiff did not assign error to the trial court's ruling bifurcating the trial and deciding to try defendants' counterclaim for specific performance of the settlement agreement before trying plaintiff's claims against defendants. If plaintiff did not assign error to that

---

[9] We express no opinion on whether the reasoning stated in *Beacon Theatres* applies under Article I, section 17. This case does not require us to decide that issue.

ruling, then plaintiff necessarily failed to take the steps necessary to pursue any argument that the trial court should have tried its contract claims before trying defendants' counterclaim. Having considered plaintiff's arguments, we hold that Article I, section 17, of the Oregon Constitution did not require the trial court to try either defendants' counterclaim or their affirmative defense to a jury.

Plaintiff raises an alternative issue on review. Plaintiff argues that, if we affirm the trial court's ruling on its jury trial claim, then we should reach the issue whether the trial court erred in denying plaintiff prejudgment interest. Regarding that issue, the trial court found that, on February 22, 2001, plaintiff agreed to release its claims against defendants in return for a payment of $800,000. The parties also agreed that, to the extent that plaintiff owed money to its suppliers, defendants would issue joint checks to plaintiff and its suppliers out of the $800,000 payment. Defendants asked plaintiff to provide them with the suppliers' names and the amount that plaintiff owed each supplier so that defendants could prepare joint checks. Approximately a week later, plaintiff repudiated the settlement agreement; plaintiff took the position that the parties' discussions on February 22, 2001, had not resulted in a final, binding agreement.

When defendants submitted a proposed judgment to the trial court, plaintiff objected because the judgment entered in 2004 did not require defendants to pay prejudgment interest on the $800,000 that defendants had promised to pay plaintiff in 2001. The trial court overruled plaintiff's objection, and the Court of Appeals affirmed that ruling without discussion. *McDowell Welding & Pipefitting*, 209 Or App at 444. On review, plaintiff renews its claim that the trial court should have awarded it prejudgment interest.

Plaintiff's claim for prejudgment interest arises in a different posture than many prejudgment interest claims. Typically, the person from whom prejudgment interest is sought has breached some duty; that is, the person has failed to pay money when due or wrongfully retained money, and prejudgment interest is available either under ORS 82.010 or to remedy a breach of a fiduciary duty. *See* ORS 82.010(1)(a) (authorizing prejudgment interest on "[a]ll moneys after they become due"); ORS 82.010(1)(b) (authorizing prejudgment

interest for "[m]oney received to the use of another and retained beyond a reasonable time without the owner's express or implied consent"); *Stephan v. Equitable S & L Assn.*, 268 Or 544, 573-74, 522 P2d 478 (1974) (providing for recovery of interest as a remedy for a breach of a fiduciary duty). In those cases, the person from whom prejudgment interest is sought has breached a duty to pay or return money and the question usually reduces to whether the amount due is readily ascertainable. *See, e.g., Public Market Co. v. Portland*, 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943) (holding that prejudgment interest is available on unliquidated damages as long as the amount due is readily ascertainable).

This case arises in a different posture. In this case, defendants did not breach any duty that they owed plaintiff under the settlement agreement. Rather, plaintiff had repudiated the settlement agreement, excusing defendants from fulfilling their promise to pay $800,000. *See Howard v. Thomas*, 270 Or 6, 14-15, 526 P2d 552 (1974) (holding that, when defendants refused to consummate sale, plaintiffs were excused from making promised payment). Because defendants had no obligation under the settlement agreement to pay plaintiff, plaintiff may not recover prejudgment interest under the usual theories; that is, plaintiff may not recover prejudgment interest because defendants failed to pay money when due or wrongfully retained plaintiff's funds. *See* ORS 82.010(1)(a) and (b) (stating those grounds for recovering prejudgment interest). Nor may plaintiff recover prejudgment interest to remedy a breach of a fiduciary duty; defendants did not breach any fiduciary duty they owed plaintiff.

Plaintiff argues, however, that defendants had the use of the $800,000 from the time that the parties entered into the settlement agreement in 2001 until the court issued its judgment in 2004. Plaintiff contends that conditioning the judgment entered in 2004 on defendants' paying plaintiff in 2001 dollars fails to take into account the time value of money, unjustly enriching defendants. Plaintiff reasons that, once defendants chose to seek the benefits of the settlement agreement and asked the trial court to order specific performance, the trial court should have conditioned plaintiff's performance of the settlement agreement on defendants'

payment of the agreed sum plus interest. *See Wittick v. Miles*, 268 Or 451, 455, 521 P2d 349 (1974) (so requiring); *Restatement (Second) of Contracts* § 358(1) (discussing trial court's authority to condition the terms of an order requiring specific performance of a contact).

Wittick is squarely on point and supports plaintiff's argument. In *Wittick*, the plaintiffs sought specific performance of an earnest money agreement for the sale of land. 268 Or at 452. The plaintiffs had paid approximately one third of the purchase price and were willing and able to pay the balance on the defendant's tender of the deed and title insurance, as the earnest money agreement provided. *Id.* When the defendant refused to tender the deed and repudiated the contract, the plaintiffs brought an action for specific performance. *Id.* In upholding the plaintiffs' claim for specific performance, this court explained that, as a condition of seeking specific performance, plaintiffs would be required to pay the amount of money still owing under the earnest money agreement plus either interest or rents and profits (depending on whether the plaintiffs were or were not in possession). *Id.* at 455. As this court explained, "[w]hatever adjustment needs to be made between plaintiffs and defendant with respect to interest and rents and profits can be made as part of the decree." *Id.*

In *Wittick* and also in this case, the party seeking specific performance of the agreement had not breached its terms, and the party against whom enforcement of the agreement was sought had repudiated it. In *Wittick*, even though the plaintiff had not breached the agreement, this court held that specific performance of the agreement should be conditioned on plaintiff's paying the money due under the agreement plus interest (or rents and profits). Once the plaintiffs in *Wittick* chose to overlook the defendant's repudiation and seek specific performance of the settlement agreement, payment of prejudgment interest was necessary to give the defendant the benefit of the bargain that the plaintiffs chose to enforce. It follows that, under the reasoning in *Wittick*, the trial court should have conditioned its judgment granting

specific performance of the settlement agreement on defendants' paying $800,000 plus interest from the date of the agreement.[10]

■ Defendants argue that, even if they otherwise would be liable for prejudgment interest, they tendered payment to plaintiff and thus cut off plaintiff's right to seek prejudgment interest. *See Bembridge v. Miller*, 235 Or 396, 402-03, 385 P2d 172 (1963) (recognizing the effect of tender). Defendants note that the trial court found that defendants "were ready, willing and able to perform and plaintiff was denied access to the money because of its wrongful refusal to perform under the terms of the settlement agreement." To constitute a tender of money, however, the money "must actually be produced and made available for the acceptance and appropriation of the person to whom it is offered." *Id.* at 402. Alternatively, "[a]n offer in writing to pay a particular sum of money * * * is, if not accepted, equivalent to the actual production and tender of the money * * *." ORS 81.010; *see Bembridge*, 235 Or at 402 (discussing that statute).

The trial court's findings do not show that defendants tendered payment to plaintiff. Rather, as the trial court found, the record reflects that the parties entered into a settlement agreement, that defendants requested information that would permit them to issue checks to plaintiff and its suppliers in the future, and that defendants were prepared to do so. The prospect, however, that payment might occur at some point in the future is not sufficient to defeat plaintiff's claim for prejudgment interest.

Because we conclude that plaintiff is entitled to prejudgment interest, we reverse the Court of Appeals decision and the trial court's judgment on that issue so that the trial court can determine that amount of prejudgment interest owed and condition plaintiff's specific performance of the settlement agreement on defendants' payment of $800,000 plus interest. In all other respects, the Court of Appeals decision and the trial court's judgment are affirmed.

---

[10] Because the amount that defendants owe under the agreement is readily ascertainable, that condition poses no bar to requiring payment of prejudgment interest.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.